STATE OF MISSOURI EX REL., PAUL ADKINS ET AL., RESPONDENTS, v. S. GRUGETT ET AL., APPELLANTS.—63 S. W. (2d) 413.

Springfield Court of Appeals, September 20, 1933.

Rehearing denied, October 7, 1933.

*McKay & McKay* and *Orville Zimmerman* for appellants.

*Langdon R. Jones* for respondents.

BAILEY, J.—This suit is brought in the name of the State of Missouri at the relation of Paul Adkins and Maletta Adkins, minors, by B. H. Grugett, guardian and curator, upon the official bond of S. E. Grugett as Sheriff of Dunklin County, Missouri. The regular judge of the Dunklin County Circuit Court disqualified himself and the cause was transferred to the Circuit Court of Wayne County, where it was tried by the court without a jury on the 6th day of August, 1931. After due trial the cause was taken under advisement and judgment rendered against defendants on the 4th day of February, 1932, in the sum of $1690.42. An appeal was taken to this court and heard at the May Call of the March Term, 1933.

Plaintiffs' petition, after alleging that defendant S. E. Grugett was the duly elected and acting sheriff of Dunklin County for a term of four years commencing on the 1st day of January, 1925, and expiring on the 31st day of December, 1928, and that the other defendants were sureties on his official bond as sheriff, further alleges that on October 9, 1924, there was filed in the Circuit Court of Dunklin County, an action in partition in which Mary Parker Gaston was plaintiff and Levern Parker, William (Billie) Parker, Ethel Parker, Paul Adkins, Maletta Adkins, Mary E. Gunter and J. I. Caneer were defendants, the action being to partition a certain described 120 acres of land in Dunklin County; that the petition in said suit alleged that the parties plaintiff and defendants owned all the interest in said real estate and that all debts against the estate had been paid except a deed of trust held by defendant J. I. Caneer; that a guardian *ad litem* was appointed for the minor defendants in that suit; that at the hearing on said cause the court found and decreed that the land should be partitioned and that the interest of Paul Adkins and Maletta Adkins, jointly, was an undivided 10-54 interest in said land subject to the dower right of the widow therein; that commissioners were appointed and made their report at the July Term, 1925, in which they reported that partition in kind could not be made without great prejudice to those interested; that thereupon the court ordered the sheriff to sell said real estate in accordance with law; that in conformity with said order the said sheriff sold said real estate for the price of $9800 less taxes then due; that said Sheriff made a report of said sale which was approved by the court during the October Term, 1925; that the court further ordered that distribution be made in accordance with the decree of

the court; that S. E. Grugett, as sheriff, made and executed a deed to the purchaser at said sale and that thereby Paul and Maletta Adkins were divested of all right and title in and to the land in said partition proceedings; that it thereupon became the duty of said sheriff to pay over to Paul and Maletta Adkins their share of the proceeds from said sale amounting to $1291.10, which amount said sheriff then had in his hands belonging to them; that said sheriff received said money in his official capacity, but refused to pay same either to said minors or their guardian; that thereby said sheriff and the sureties upon his said official bond became liable to the State of Missouri for the use and benefit of plaintiffs in the sum of $1291.10, for which plaintiffs pray judgment.

Defendants' answer, among other things, contains the following averment: "that the plaintiffs herein are the minor children of Mary Parker Adkins; that Mary Parker Adkins was the daughter of John T. Parker, deceased, who was the common source of title, the proceeds of the sale of which is in controversy in this action; that John T. Parker died on or about the —— day of December, 1917, leaving as one of his children and heirs at law of his property Mary Parker Adkins; that Mary Parker Adkins was the wife of R. A. (commonly called Bob) Adkins, father of the minor children, plaintiffs herein; that at the death of John T. Parker, deceased, on the —— day of December, 1917, the said Mary Parker Adkins and R. A. (commonly called Bob) **Adkins were husband and** wife and had borned to them Paul and Maletta Adkins, their children, as such husband and wife; that on or about the —— day of ———— in the year 1919 or 1920 Mary Parker Adkins died leaving surviving her, her two minor children, plaintiffs herein, and her husband, R. A. (commonly called Bob) Adkins, and left her interest in her deceased father, John T. Parker's real estate; that under the law as it then existed the said R. A. (commonly called Bob) Adkins was entitled to dower by the curtesy, that is to say the use and control of all the real estate left by his deceased wife, Mary Parker Adkins, for and during his natural life; that the said R. A. (commonly called Bob) Adkins was, at the time of the death of his wife, Mary Parker Adkins, under the age of twenty-nine years; and that his curtesy interest in said real estate did exceed and was greater than plaintiff's claim in the land mentioned in their petition."

It was further alleged in said answer that certain attachment suits were brought against said R. A. Adkins in which judgments were obtained aggregating the sum of $1291.10, and that that amount, derived from the sale of said real estate, was paid out upon valid judgments of the Circuit Court rendered against defendant S. E. Grugett as garnishee, under which said defendant was ordered to pay over said money to the parties plaintiff in said suits; that the

interest of said R. A. Adkins was duly and regularly acquired under and by virtue of said attachment suits and his interest in said property being equal to or greater than the interest of the minors, there was no obligation on the part of defendant Sheriff or his bondsmen.

There is no dispute about the facts in this case. The record consists almost entirely of documentary evidence tending to prove both the allegations of the petition and defendants' answer. The record shows that John T. Parker died in 1917 or 1918, intestate, seized of the real estate involved in said partition suit; that at the time of his death he left surviving him his widow, Mary E. Parker and several children including May Parker Adkins, mother of the minor plaintiffs in this suit and wife of Robert A. Adkins; after the death of John T. Parker and during the year 1920, May Parker Adkins died, leaving surviving her, her husband, commonly called Bob Adkins, and the said two minor children, plaintiffs herein; that thereafter the partition suit hereinbefore referred to was instituted; in this suit the minor children of May Parker Adkins, plaintiffs herein, were made defendants, but Bob Adkins, her husband, and the father of said plaintiffs, was not for some reason made a party to the suit; upon the hearing of the cause, partition was ordered, the land was sold, sheriff's report filed and the sale was approved by the circuit court; while the money derived from said partition sale was yet in the hands of the sheriff, three attachment suits were instituted against the said Bob Adkins, husband of May Parker Adkins, and the sheriff was summoned as garnishee; interrogatories were filed and upon due hearing judgment was rendered against the sheriff as garnishee and he was ordered to pay the amounts due the respective attaching creditors of said Bob Adkins out of the funds in his hands derived from said sale in partition; the sheriff paid out on these judgments as much or more than plaintiffs' claim in this suit and nothing was paid plaintiffs.

Defendants assign as error the refusal of certain declarations of law requested by them at the trial. Briefly, the question thus raised is whether or not the payments made by the sheriff to the attaching creditors of Robert A. (Bob) Adkins, under the order of the circuit court, constitute any defense in this case. In regard to this question it further appears from the record that after the attachment suits were filed against Bob Adkins, the sheriff, as garnishee, filed his answer to interrogatories in which he admitted that he had in his hands the sum of $1291.10, "being money derived from the sale of real estate belonging to John T. Parker, deceased, which was paid to him as the interest of Mary Parker Adkins, deceased, daughter of John T. Parker, who died since the death of her father, John T. Parker and who at the time of her death was the wife of

Robert A. (commonly called 'Bob') Adkins, under a partition sale by this court. As to whether or not Robert A. (commonly called 'Bob') Adkins has any interest in said funds, garnishee herein is not advised." As heretofore noted, service on Bob Adkins in the attachment suits was by publication. The trial court sustained the attachments and found there was in the hands of the sheriff the amount of money above set forth and ordered that amount paid to the attaching creditors. The minor children of Mary Parker Adkins, plaintiffs herein, are not mentioned either in the answer to the interrogatories or in the judgment in the attachment suits, although they were parties to the partition suit and their interests were found and set out by the court in the partition decree.

It is our opinion that the judgment of the trial court ordering defendant Grugett to pay over the money in his hands to the attaching creditors, is no defense in this case. In the first place, the money in the hands of the sheriff was not the property of Bob Adkins. He was not a party to the partition suit and the money derived from the proceeds of the partition sale belonged to the parties to that suit according to their respective interests as decreed by the court. If Bob Adkins had any interest in the property, which he unquestionably did have, it was not sold by the sheriff in the partition sale, since he was not a party to the suit and nothing in the nature of an estoppel as to him appears from the record. The case of Carson v. Hecke (Mo. Sup.), 222 S. W. 850, was quite similar on its facts to the case at bar. In that case a suit was filed to partition the lands of one Annie E. Lane. After the lands was ordered partitioned and to be sold, John Lane, husband of Annie E. Lane, who had not been made a party to the suit in partition, moved the court that he be made a party, claiming a curtesy interest in the land, and offered to accept, in lieu of curtesy, a gross sum to be computed under the statutory mortality tables. The trial court sustained the motion, computed his interest out of the proceeds of the sale of the land and ordered distribution of the proceeds in accordance therewith. Other parties to the partition suit took an appeal to the Supreme Court. The latter court, in holding that John Lane had no interest in the fund derived from the partition sale said, "We can think of no theory on which Lane is entitled to any part of the proceeds of the parcels, as he was not a party to the suit prior to the sale, and his curtesy was neither sold nor bought, but only the interests and estates of the parties. [Smoot v. Judd, 161 Mo. 673, 691, 61 S. W. 854, 84 Am. St. Rep. 738.]

"If the purchasers knew Lane was living and held the curtesy, probably the prices they bid were less than they would have offered had he been a party and his interest adjudged and sold. However, that may be, they bought the titles only of the parties to the suit,

and, so far as appears on the present record, claim no more." It is no doubt true, as contended by defendants, that the curtesy interest of Bob Adkins in his wife's share of the land sold, when computed according to the mortality table and based on the price obtained at the sale, was worth as much as the amount herein involved. But under the rule announced in the Carson case, supra, there was no interest of Bob Adkins, in the proceeds of the sale, to be computed. If Bob Adkins had no interest in the proceeds of the partition sale, then his creditors could claim none. A garnishing creditor, "claims through *his* debtor, and, in the absence of fraud, can claim no higher right against the garnishee than his debtor could claim. [McPherson v. Railroad, 66 Mo. 103; The Scarritt Furniture Co. v. Moser & Co., 48 Mo. App. 543, l. c. 548.]" The judgment in the attachment suits were based on the theory that the sheriff did have property or monies belonging to Bob Adkins. The service was by publication on Bob Adkins and the court had no jurisdiction over him personally, but the jurisdiction was limited to the property brought into court. The only property brought into court was the money in the hands of the sheriff derived from the partition suit, and since Bob Adkins had no interest therein, there was nothing upon which the attachment could be sustained. In other words, the court rendering the judgments in the attachment suits had no jurisdiction over either the person or any property of Bob Adkins when the judgments were rendered, and the whole proceedings were void. [Typewriter Co. v. Cash Register Co., 156 Mo. App. l. c. 106, 135 S. W. 992.]

It is true a garnishee is protected by the judgment of the court in garnishment proceedings if and when the court before which the proceedings are pending has jurisdiction. [Potter v. Whitten, 161 Mo. App. 118, 142 S. W. 453; Hedrix v. Hedrix, 103 Mo. App. 40, 77 S. W. 495; McPike Drug Co. v. Wilson, 237 S. W. 1044.]

But where the court rendering the judgment is without jurisdiction, the judgment against the garnishee does not protect him for money paid out and it is the duty of the garnishee to raise the question of jurisdiction as a defense against the garnishment. In the Hedrix case, supra, the rule is thus stated:

"It devolves upon the garnishee, not merely as the exercise of a right, but also as a duty and in self protection, to make the defense, that the judgment, upon which the writ of garnishment was based, was void for want of jurisdiction. If the court rendering the original judgment had attempted to exercise jurisdiction without any legal foundation, the whole proceeding was void and no property or credits of defendant could be divested through it, and a garnishee voluntarily submitting to judgment for any amount in his hands belonging to defendant, without interposing the defense of absence of jurisdiction, would neither be protected in the subsequent payment of

such judgment, nor discharged from the indebtedness as against defendant, who could be deprived of his property only by due process of law. [Mercantile Co. v. Bettles, 58 Mo. App. 384.] In the words of an eminent commentator: 'It follows, hence, that a garnishee must for his own protection, inquire, first, whether the court has jurisdiction of the defendant, and next whether it has jurisdiction of himself. If the jurisdiction exists as to both, he has no concern as to the eventual protection which the judgment of the court will afford him; it will be complete.' [Drake, Attachment, Sec. 695.]"

Under the facts and the law as applied thereto in this case, we conclude that the sheriff, defendant herein, had no property or effects in his hands belonging to Bob Adkins at the time he was summoned as garnishee; that the monies paid out by him were the property of the minor plaintiffs herein; that the attachment proceedings were void and the judgment rendered against the garnishee was of no effect and afforded said defendant no protection.

It is urged that this suit cannot be maintained because there was no final order of distribution in the original partition suit. The decree of the circuit court in that case set forth the interest of the minors; the sale by the sheriff was ordered and after the sale his report thereof was approved. The sale was therefore legal and binding on all parties to the suit and the money in the hands of the sheriff derived from that sale was the property of the parties to that suit in proportion to their respective interests as determined by the court. The fund in controversy was the property of these minor plaintiffs and was paid out by the sheriff to other persons. He is in no position to raise the point that no order of distribution was made since he admits he has disbursed this particular fund. The judgment should be affirmed. It is so ordered. *Allen, P. J.,* concurs; *Smith, J.,* not sitting.